May it please the Court. Good morning, Your Honors. Anna Tolan on behalf of Beverly Camerly. Your Honors, the jurisprudence of the Supreme Court and all the circuits across the country have made it clear that when it comes to plea bargaining, the government holds the cards. Because of that, this Court has always and must continue to hold the government and the courts to the strictest adherence to the promises and assurances that are made to a defendant in the course of plea bargaining. I'd like to begin by talking about the breach of the plea in this case and the impact that that has on the appeal waiver. It is Ms. Camerly and Mr. Alexander's position that the government's breach in this case nullifies the appeal waiver consistent with this Court's prior decision in United States v. Gonzalez. The Court in Boatner talked about that even if a case of breach occurs where the District Court might itself reject what the government was offering and find a different conclusion to the facts being advocated for, that that is not the issue. The issue is what did the government promise. And in this case, when we look at the plea colloquy and we look at two things, what the government said and what they didn't say, the breach becomes clear. The plea agreement in this case clearly sets out that the agreed sentencing guideline calculations are as follows, and those called for a 6-level base offense level with a 16-level bump. In fact, at sentencing, the government advocated for an additional 16 levels. Now, in this plea colloquy, which I think is the critical area of focus with regard to the breach, the Court promised Ms. Kammerling that this was the agreement that everyone was reaching. And the government said nothing when the Court said, Mr. Alexander, Ms. Kammerling, is this your understanding of the promise as to the sentencing guideline calculations that the parties will recommend? The government did not say, wait, Your Honor, we're going to ask for 16 more levels to enhance that sentence. No. What the government said was, when Ms. Kammerling in particular was balking at the plea and concerned about whether she would be treated fairly by the government, the government stood up and said, Your Honor, we will adhere to the four corners of this agreement. I thought... Go ahead. Can the government look to what the defendant did awaiting sentencing? Well, the government has never raised the fact that Ms. Kammerling breached the plea agreement prior to sentencing, and so short of her breaching the plea agreement, they would have to maintain their provisions of the plea agreement. So I don't believe that the government can take those actions and use those to undermine what they promised in the nature of the plea. I think the proper course would have been if they felt that her conduct was actually a breach of the agreement, which I don't believe it would have been, may have been ill-advised, it may have been troubling to the courts, but it was certainly not a breach of the plea agreement. In this case, the government clearly promised that that was the guideline calculation they were admitting to. And in the plea colloquy, if I'm remembering this correctly, your client was expressing concerns that there might be imposed a sentence or the government might ask for a sentence that was higher than the co-defendant's. And so the question I had in reading this is, why did she have that concern if she thought the language of the guidelines of the plea agreement actually bound the government to that limited set of provisions? It seemed as if she did not read the plea agreement to limit the government, and that was why she was expressing concerns. I think that gets to the issue, Your Honor, of the fact that the agreement was as to the guideline calculation, which is the starting point. The government, of course, remained free to argue additional issues under 3553, and that was where there was some openness. They were not committing to a recommendation. And I think it's whether or not Ms. Camerling related those two, I do think they are distinct in that because the courts have routinely held that these particular guideline calculations are the starting point, then really everything builds from that. And there's numerous times in district courts where the court will accept a party's benefit of the bargain and say this is the guideline calculation. Others may disagree with the calculation, but this is the benefit of the bargain, and we'll look to these other issues with regard to their impact on 3553. So I don't think that negates the fact that the government breached the agreement. I think it is reasonable to look at this objectively and indicate that this was a promise made by the government, a promise condoned by the district court in its plea colloquy. And then we go on to this issue of I'd like to move on briefly to the issue of acceptance and the denial of acceptance where the district court promised Ms. Camerling that by pleading guilty she, in fact, would obtain that three-level deduction. And whether or not the court was wrong, those promises must be enforced in the district court. Thank you. My time is up. May it please the court. Terrence Kellogg, appearing for Nicholas Alexander. Thank you for the opportunity to be here this morning. As a corollary to the argument that Ms. Tolan has made on behalf of both parties that the government has breached the plea agreement, we submit that sort of the flip side of that is the enforceability of the waiver in the plea agreement in the first instance. In other words, we submit on behalf of both Ms. Camerling and her son, Mr. Alexander, that it was not a knowing, intelligent, voluntary plea waiver given the totality of the plea agreement itself because of the issue as to not referencing additional enhancements which the government would ask for, which is a related but separate issue than one breached by the government. The difference made was absolutely astounding. Mr. Alexander, at the time, shortly before sentencing, before he received the government sentencing recommendation and the probation pre-sentence report, was anticipating a guideline calculation of level 22 before the reduction of three points for acceptance and responsibility. The actual guideline calculation is advocated by the government at the time of sentencing and is found by the court at the time of sentencing was a level 36 based upon the enhancements that the government had asked for, which then was reduced three levels for the acceptance of responsibility. That is such a disparate difference between what was understood by the parties that we submit it vitiates the question of whether or not it was a knowing, intelligent, and voluntary waiver entered into in the first instance by both Mr. Alexander and Ms. Camerling at the time of the plea agreement. Because of that, we're asking that the waiver not be found to be a... Was there any attempt to negotiate a clearly binding agreement, an agreement that would bind the court? Neither Ms. Tolan nor I were trial counsel. I think... I didn't see anything in the record to that effect. Well, you're absolutely right. I don't think that there was except that I think that the plea colloquy that was referenced by Judge Ikuda came at a time by Ms. Camerling herself who was attempting to set forth the parameters of what the binding plea agreement was in the context of... It's hard to characterize this as a binding agreement, an agreement that would bind the court. It's not a C1C type agreement. No, it's pretty clear that the court had flexibility. Yes, and we're not arguing that the court did not have flexibility. Our concern is, as addressed by Ms. Tolan, whether or not the government reached its obligations under the plea agreement. You have to read into this that the government was going to make this recommendation and only this recommendation. I think that the question is what was in the minds of both Ms. Camerling and Mr. Alexander at the time that they entered into it. And it was their understanding that that was in fact the case because of the silence in the plea agreement. It's customary in this district to set forth in the plea agreement the intent of the parties to argue other enhancements and to not be precluded from doing so in the plea agreement. That language was missing. Did either of these defendants argue for their own downward adjustments? Mr. Alexander did. He asked for a lesser role. He didn't think that he was bound by this. Well, at sentencing he asked for a lesser role. He didn't think the disagreement precluded that. His lawyer did seek a role reduction at the time of sentencing. Your Honor is correct about that. And if there are no other questions, we will. Thank you. Good morning, Your Honors, and may it please the Court. My name is Michael Morgan, and I represent the United States on this appeal. Your Honors, the only parties that have breached this plea agreement are Mr. Alexander and Ms. Camerling. They breached that agreement when they filed their notice of appeal. The plea agreement is unequivocal. Filing of a notice of appeal is a breach. It entitles the government to reinstate every single count that's been dismissed against them. The government hasn't done so. The government has no desire to do so. But for them to come in and accuse the government, who is hewed to the terms of this agreement of breaching, is just counterfactual. The only promise that the government made in this agreement was that it would agree to two guidelines enhancements. They weren't agreeing not to advocate for any other guidelines enhancements that might be applicable. And as Judge Pius recognized, the defense clearly understood that they were not bound to not advocate for whatever guideline reductions they thought were applicable. That was the nature of this agreement. This agreement was simply that we agreed on two, and at sentencing the rest would be hashed out. For the government to come in and advocate for the enhancements that were borne out in the pre-sentencing investigation was perfectly consistent with this agreement. What was the purpose of agreeing on just two of them? Was there a benefit to the government or a benefit to the defendant, or what was the reason for that language? Your Honor, since I didn't negotiate the agreement, I can't speak specifically, but I can tell just from the nature, this was a fairly contentious negotiation. I think it's clear from the record that the defendants were not too thrilled to be pleading guilty. And I think these were just two of the enhancements that we could just take off the table. They're really, I mean, the amount of loss really wasn't subject to dispute, and the base offense level is the base offense level. So those are just two things that could be agreed upon. There really was no agreement about anything else between the parties, and that's why there's nothing else in this agreement. Usually, customary, I don't know about up here, but counsel just represented, usually the plea agreements contain a little statement. This doesn't preclude either the government or the defendant from arguing for other reductions or enhancements. That would perhaps be a more erudite way of drafting the plea agreement. It's done all the time. It doesn't get erudite about that. Well, Your Honor. It's pretty common. It's obviously not done all the time. You would agree it's pretty common, isn't it? It's not uncommon. I don't know with what frequency it is. I have a feeling it's a function of the particular assistant who's drafting the agreement. But nevertheless, while I think that such language would perhaps have taken an issue off the table for the defense, I don't think it changes the nature of what this plea agreement is. I'd like to address briefly just the argument that somehow the district court made some promises to the defendants that were breached here. As I see it, the main issue that at least Defendant Camerling is pressing is that the district court promised her a reduction for acceptance of responsibility and that, therefore, when the government came in and objected to that, not surprisingly given her post-plea conduct, that that somehow was a breach of the agreement. And the short answer is the district court made no such promise. The court simply said that by pleading guilty, this, quote, works to reduce your sentence by three levels. It works to. The guilty plea is a necessary condition, not a sufficient condition. There's simply no way that any reasonable person could have understood the district court to be promising Ms. Camerling that merely by pleading guilty, she could turn around the next day and profess her innocence to the rafters and to anyone that would listen, and even to the district court at sentencing, and then insist that she's entitled to an acceptance of responsibility reduction. There's just no way the district court's colloquy can be read to support that argument. Let me ask. If we agree that the government's position that they waived their right to appeal, is this issue off the table completely? Which issue? The one you just addressed. Well, I would say yes. I think the defendant, Camerling, is trying to fold that issue into a breach, simply that I think part of her argument is the district court amended the agreement orally, and that therefore when the government came in and advocated for the non-acceptance of responsibility, that was also a breach. And the short answer, again, to that is that the record simply doesn't support a finding that the district court, you know, itself modified the agreement and the government didn't cure that. Unless the court has any other questions with regard to this, the government is content to rest on its briefing for the remaining points. Thank you. Thank you, Your Honors. Thank you, Your Honors. First of all, I do not believe that the fact that the parties have raised an appeal issue that legitimately addresses the validity of an appeal waiver is in itself a breach because appeal waivers are not absolute and unlawful pleas can be appealed under appeal waivers. And when there is a breach, as this court has held, that is an unlawful appeal waiver. The government suggests with regard, respond to a couple of things, with regard to the statement made by the district court that by entering the plea this afternoon that works to reduce the three points of the sentencing guideline calculation to authorize Ms. Kammerling to rely upon the fact that she would, in fact, obtain an acceptance of responsibility reduction. Your Honor asked what was the reason for indicating what these two levels were with regard to the base offense level and the adjustment. Well, I can tell you, Your Honors, what the reason was was to induce this plea agreement. There's no other reason to be had for the parties to agree to stipulated facts and to stipulated guideline calculations other than to induce a plea agreement and to allow a defendant to have some reliance on what is going to be put forth by the government in its advocacy down the road. And the waiver stated, as I understand it, that as long as the sentence was at or below the guidelines that there could be no appeal. That's a pretty flat-out statement. So you've got to persuade us that there was truly a breach by the government. And just outline for me exactly what those breaches are. Your Honor, the breach in this case, I believe, focuses primarily on the fact that this plea agreement clearly states these are the agreed guideline calculations. The court asked Ms. Kammerling, do you understand that these are the guideline calculations? The court asked Mr. Alexander, do you understand these are the agreed guideline calculations? It was reading the plea agreement that the government drafted and the government said nothing that they would do something different. In fact, the government said, we promise to adhere to that agreement. It didn't say, if we feel like it at sentencing, we're going to ask for a 16-level bump for both of you in the court's initial guideline calculations because we all know how important those guideline calculations remain in the context of sentencing. I believe that breach is abundantly clear when the government promises to do something under a plea agreement with regard to guideline calculations and then absolutely ignores it. The case law indicates that the silence in a plea agreement doesn't mean that the government can do something else. It has to be construed strictly against the government because they are the ones holding the cards. They are the ones that have to adhere to the precise language. And in this case, that precise language was adopted by the district court, was relayed to the parties, was reminded, they were reminded of that in their pleas, and that there was simply no discussion that this entire playing field would be changed and that by the time they got to sentencing, they would in fact ask for something entirely different. There's no stipulated facts in the plea agreement that outline specific support for those enhancements. And that is another reason to look at the language both in that agreement of what these guideline calculations will be and what in fact those facts are that the parties are agreeing are the underlying facts. There's nothing in there that would suggest that there's some misunderstanding about those guideline provisions because there's additional facts. And so I do believe, Your Honor, that the plea breach is clear and that it is a breach that was occasioned by the government in this case. Thank you. Okay. Thank you. The United States v. Alexander and Kamerlian are submitted at this time. Thank you, counsel. We appreciate your arguments.
judges: Fletcher B. , Paez, Ikuta